**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRITTANY HENRY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:** 2:22-cv-1085 |
| | : | |
| **PRIVATE INDUSTRY COUNCIL OF WESTMORELAND/FAYETTE, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

AND NOW, comes Plaintiff, Brittany Henry, by and through the undersigned counsel, J.P. Ward & Associates, LLC. and, specifically, Sammy Y. Sugiura, Esquire, who files the within Complaint in Civil Action against Defendant, Private Industry Council of Westmoreland/Fayette, Inc., of which the following is a statement:

## PARTIES

1. Plaintiff, Brittany Henry (hereinafter "Ms. Henry"), is an adult individual who currently resides at PO Box 199, Melcroft, PA, 15462.

2. Defendant, Private Industry Council of Westmoreland/Fayette, Inc., (hereinafter "PIC"), is a corporation with its principal place of business located at 219 Donohoe Road, Greensburg, PA, 15601.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Plaintiff brings this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e-2(a)(1) (hereinafter, "Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (hereinafter, the "PHRA").

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

**FACTUAL BACKGROUND**

6. PIC was founded in 1983, and is an organization that operates employment, education, and training programs in southwestern Pennsylvania.

7. PIC works to provide services to families and individuals in the area by assisting youth, adults, dislocated workers, and the economically disadvantaged in obtaining and retaining employment, attaining educational achievement, and supporting their family growth.

8. PIC operates over 25 programs through an organizational structure of three divisions - Early Childhood Development, Education, and Workforce Development.

9. On October 21, 2019, Plaintiff began her employment with PIC as a Family Resource Specialist.

10. Ms. Henry took a job with PIC because she believed in the company's mission and has a passion for helping disadvantaged children and their families.

11. As part of her job duties as a Family Resource Specialist, Ms. Henry was expected to provide instruction and guidance to pregnant women, infant/toddlers, preschoolers and their families in PIC's Early Head Start Home Based programs and during group socializations.

12. On June 14, 2021, Ms. Henry was sitting in her office when she heard strange noises emanating from the breakroom. When Ms. Henry approached the breakroom, she could hear someone repeating the phrases "oh yeah" and "oh oh".

13. When Ms. Henry approached the doorway of the breakroom, she observed a coworker masturbating with his pants pulled down.

14. Ms. Henry was shocked by this breakroom incident, and the brazen behavior of this coworker who was publicly masturbating in a breakroom, shared by PIC employees, during work hours.

15. Ms. Henry immediately notified PIC about this incident. In response, the resource specialist informed Ms. Henry that she should call her superiors and managers to report the incident.

16. Ms. Henry called her manager, Mary Catherine Piper (hereinafter "Ms. Piper") and reported the breakroom incident to her. Ms. Piper assured Ms. Henry that she would handle and investigate the incident.

17. Upon information and belief, the masturbating coworker had been reported for similar behavior in the past. Despite these reports, the masturbating coworker remained employed with PIC.

18. Ms. Henry spoke with another PIC employee, who stated that she had previously reported the masturbating coworker to PIC for similar conduct.

19. Despite these reports, the masturbating coworker was permitted to work at PIC, even though his job duties required him to be in direct contact with children.

20. On June 17, 2021, Ms. Henry followed up on her initial report of the masturbating coworker by submitting a complaint to the Director of PIC. Immediately thereafter, Ms. Henry

was called into a meeting with PIC's Assistant Director, Lori Bowers (hereinafter "Ms. Bowers"), and Director, Erica Thomas (hereinafter "Ms. Thomas").

21. During this meeting, Ms. Henry expressed her concerns about the breakroom incident; similar allegations against the masturbating coworker that had occurred in the past while he was employed by PIC; and PIC's failure to remove the masturbating coworker from directly interacting with children. In response, Ms. Thomas and Ms. Bowers suggested that they believed Ms. Henry only reported this incident to retaliate against the masturbating coworker. Ms. Thomas then accused Ms. Henry of improperly reporting the breakroom incident to PIC. When pressed for explanation, Ms. Thomas and Ms. Bowers were unable to provide any evidence, information, or even an explanation for their claims that Ms. Henry was retaliating against the masturbating coworker.

22. Ms. Henry was then told by PIC that she had to keep all reports about the masturbating coworker confidential. PIC warned Ms. Henry that if she did not keep this matter confidential, she could be disciplined and/or lose her job. Every meeting thereafter, PIC continued to warn Ms. Henry about keeping this matter confidential so that she reasonably believed that her employment was conditioned on not telling anyone else about this incident.

23. On or about June 25, 2021, PIC notified Ms. Henry that their investigation into the masturbating coworker was complete. Ms. Henry was informed that the masturbating coworker would not be suspended. Thereafter, Ms. Henry observed the masturbating coworker return to work in his regular position, which put him in direct and daily contact with children.

24. Ms. Henry notified PIC that she was considering leaving due to the way that the organization had handled the investigation of the masturbating coworker. In response, PIC notified

Ms. Henry that it would be clawing back PTO hours that she had previously used and would require her to payback that missed work time to PIC.

25. Ms. Henry, however, had validly accrued her PTO time and would have been able to use approximately 33 hours of PTO time if PIC had not retaliated against her for reporting the breakroom incident.

26. Upon information and belief, PIC did not manage other employees' PTO hours in the same way, and it is believed that PIC did this in retaliation because Ms. Henry had expressed her dissatisfaction with PIC's handling of the breakroom incident to coworkers. In addition, it is believed that PIC took this action to silence Ms. Henry and prevent her from reporting this incident to anyone outside the company.

27. On June 28, 2021, Ms. Henry notified PIC that she could no longer work for the organization based on the breakroom incident; PIC's investigation of the breakroom incident; PIC's failure to properly investigate the breakroom incident; PIC's refusal to protect children from the masturbating coworker's repeated deviancy at work; and PIC's threats of discipline against Ms. Henry if she failed to keep this whole matter confidential. In short, Ms. Henry notified PIC that she felt like the masturbating coworker was a danger to herself and the children he interacted with on a daily basis.

28. Ms. Henry indicated to PIC that her last day would be July 9, 2021. In response, PIC changed her last day to July 2, 2021, so that Ms. Henry would be deprived of holiday pay for the July 4th Holiday.

29. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations and received a Dismissal and Notice of Rights on April 28, 2022. This complaint is now timely filed within 90 days of said notice. A

true and correct copy of the Dismissal and Notice of rights is attached hereto, made a part hereof, and marked as Exhibit “A”.

30. On July 22, 2021, Ms. Henry dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission (“EEOC”). Although Ms. Henry only checked the box indicating sex-based discrimination on her Charge of Discrimination, the factual allegations in that Charge of Discrimination also supported claims for retaliation.

31. By letter dated April 28, 2022, the EEOC notified Ms. Henry of her right to file a civil action against PIC.

32. Ms. Henry has initiated this civil action within 90 days of receiving the EEOC’s Right to Sue letter.

33. In accordance with 43 P.S. § 962(c)(2) of the PHRA, Ms. Henry is contemporaneously serving a copy of this Complaint on the PHRC.

34. Ms. Henry has exhausted her administrative remedies under federal and state law.

**STATEMENT OF CLAIMS**

**COUNT I**
Retaliation in Violation of Title VII and the PHRA
(Henry v. PIC)

35. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

36. To establish retaliation under Title VII, a plaintiff must show that “(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *See e.g., Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1299 (3d Cir. 1997).

37. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

38. The acts and omissions by PIC that are described in this Complaint constitute retaliation under Title VII and the PHRA.

39. As set forth hereinabove, PIC's actions were intentional, knowing, wanton, and willful.

40. As a direct and proximate cause of PIC's conduct, Ms. Henry has or will suffer substantial harm, for which Ms. Henry seeks economic, general, compensatory, equitable, and punitive damages.

WHEREFORE, Ms. Henry hereby requests this Honorable Court consider the above and grant relief in her favor and against PIC, including back pay, front pay, compensatory and punitive damages, costs and reasonable attorneys' fees, and such other relief as deemed just and proper.

**COUNT II**

Common Law Wrongful Termination
Violation of a Clear Mandate of Public Policy
(Henry v. PIC)

41. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

42. "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

43. However, under a narrow exception to this rule, an employee may bring a cause of action for termination if such termination would violate "a clear mandate of public policy" of

the Commonwealth. *Reyes v. Termac Corp.*, 2012 WL 3517372, at *2 (E.D. Pa. Aug. 15, 2012) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000)).

44. "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" *Tanay v. Encore Healthcare*, LLC, 810 F. Supp. 2d 734, 737 (E.D.Pa.2011) (quoting *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 175 (Pa. Super.1996)).

45. This public policy exception applies and permits a cause of action for wrongful discharge where the employer discharges an employee for refusing to commit a crime, where the employer discharges an employee for complying with a statutorily imposed duty, or where the employer is specifically prohibited from discharging the employee by statute. *Deal v. Children's Hosp. of Philadelphia*, 223 A.3d 705, 712 (Pa. Super. 2019) (citing *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 436 (Pa. Super. 2018); *Stewart v. FedEx Express*, 114 A.3d 424, 428 (Pa. Super. 2015)

46. Pursuant to 23 Pa.C.S.A. § 6311(a), the following adults are mandated reports and shall make a report of suspected child abuse, subject to subsection (b), if the person has reasonable cause to suspect that a child is a victim of child abuse:

> (4) A school employee.
> (5) An employee of a child-care service who has direct contact with children in the course of employment.
> …
> (8) An employee of a social services agency who has direct contact with children in the course of employment.

47. Pursuant to 23 Pa.C.S.A. § 6311(b)(1), "A mandated reporter enumerated in subsection (a) shall make a report of suspected child abuse in accordance with section 6313

(relating to reporting procedure), if the mandated reporter has reasonable cause to suspect that a child is a victim of child abuse under any of the following circumstances:"

> (i) The mandated reporter comes into contact with the child in the course of employment, occupation and practice of a profession or through a regularly scheduled program, activity or service.
>
> (ii) The mandated reporter is directly responsible for the care, supervision, guidance, or training of the child, or is affiliated with an agency, institution, organization, school, regularly established church or religious organization or other entity that is directly responsible for the care, supervision, guidance or training of the child.

48. "Under 23 Pa.C.S.A. § 6319 (relating to penalties), a licensed bachelor social worker, licensed social worker or licensed clinical social worker who is required to report a case of suspected child abuse or to make a referral to the appropriate authorities and who willfully fails to do so commits a criminal offense."

49. Additionally, pursuant to 23 Pa.C.S.A. § 6303(b.1)(4), child abuse includes intentionally, knowingly or recklessly causing sexual abuse or exploitation of a child through any act or failure to act.

50. The terms sexual abuse or exploitation include committing the offense of indecent exposure against a child. 23 Pa.C.S.A. § 6303.

51. Under the Pennsylvania Criminal Code, a person is guilty of committing the crime of indecent exposure when "that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127.

52. Under Pennsylvania law, Ms. Henry is a mandated reporter and owed a duty of care, support, and protection to the children that were in her care on the premises.

53. Ms. Henry witnessed her coworker publicly masturbating and indecently exposing himself in a school area where around thirty (30) students were present.

54. Ms. Henry fulfilled her affirmative statutory duty as a mandated reporter by reporting her masturbating coworker to several of her superiors.

55. Upon information and belief, the masturbating coworker has been reported for this type of lewd and sexually hostile behavior at PIC in the past, however, he remained employed and continued to be employed after Ms. Henry's report.

56. Incredibly, Ms. Henry's legitimate concerns and reports fell on deaf ears, and the investigation resulted in the masturbating coworker returning to work the following week.

57. Further, Ms. Thomas and Ms. Bowers turned the reports around on Ms. Henry and accused her of targeting the masturbating coworker, even though he was previously reported by Ms. Myers for indecent exposure and lewd conduct.

58. Ms. Henry was shocked and disgusted that her report would be used against her with no corrective action being taken against the masturbating coworker.

59. Following her reports, Ms. Henry faced heightened scrutiny and was effectively silenced by her superiors for performing her affirmative statutory duty as a mandated reporter concerning gross sexual misconduct in an educational environment.

60. PIC violated the public policy of the Commonwealth when it retaliated against Ms. Henry for making such reports.

61. As a direct and proximate result of PIC's conduct, Ms. Henry suffered actual damages, loss of income, lost wages, emotional distress, humiliation, shock, disgust, and loss of enjoyment and trust.

62. PIC's actions were knowing, intentional, reckless, and done with conscious indifference to the rights of Ms. Henry.

WHEREFORE, Ms. Henry hereby requests this Honorable Court consider the above and grant relief in her favor and against PIC, including back pay, front pay, compensatory and punitive damages, costs and reasonable attorneys' fees, and such other relief as deemed just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Date: July 27, 2022

**J.P. WARD & ASSOCIATES, LLC**

Sammy Y. Sugiura
PA I.D. No. 209942
sammys@jpward.com

J.P. WARD & ASSOCIATES, LLC
201 SOUTH HIGHLAND AVE
SUITE 201
PITTSBURGH, PA 15206
TELEPHONE: (412) 545-3016
FACSIMILE: (412) 540-3399

**COUNSEL FOR PLAINTIFF**